STEPHEN L. PEVAR
American Civil Liberties Union Foundation
330 Main St., First Floor
Hartford, Connecticut 06106
(860) 570-9830
*Pro Hac Vice* Application Pending

LEA C. COOPER
ISB # 3505
American Civil Liberties Union of Idaho
P.O. Box 1897
Boise, Idaho 83701
(208) 344-9750 ext. 206

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALFRED YOUNG and LORRAINE SCOTT, individually and on behalf of all other persons similarly situated,<br><br>                    Plaintiffs,<br><br>vs.<br><br>CHRIS SMITH, in his official capacity as Sheriff of Canyon County, Idaho, and GARY DUELEN, in his official capacity as Chief Deputy of the Sheriff's Department.<br><br>                    Defendants. | Case No. _____<br><br>CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## INTRODUCTION

The First Amendment to the Constitution guarantees the right to petition the government for redress of grievances. This guarantee means among other things, the Supreme Court has held, that prisoners must be permitted to file with jail staff and with the courts complaints regarding the conditions of their confinement; this is a prisoner's right of "access to the courts." *See Bounds v. Smith*, 430 U.S. 817, 821-22 (1977). Jail

staff may not retaliate against a prisoner who exercises this right.  It has long been recognized, for instance, that jail staff may not transfer a prisoner to another facility in retaliation for filing a grievance, as this would impermissibly hinder and chill the prisoner's right of access to the courts. *See Rizzo v. Dawson*, 778 F.2d 527, 532-32 (9th Cir. 1978).   As the U.S. Court of Appeals for the Ninth Circuit held in 2001 in an Idaho case, it is a violation of the First Amendment for jail staff to retaliate--or even threaten to retaliate--against a prisoner for accessing the courts. *Gomez v. Vernon*, 255 F.3d 1118, 1126-28 (9th Cir.), *cert. denied*, 534 U.S. 1006 (2001). *See also Barkey v. Reinke*, 2008 WL 2095613 (D. Idaho 2008) (*per* Winmill Ch. J.) (citing *Gomez* and holding that retaliating against a prisoner for filing a grievance violates the First Amendment).

Despite this well established principle of law, the officials who administer the Canyon County Jail (CCJ) in Caldwell, Idaho, the Defendants herein, maintain a policy and practice of retaliating against prisoners who file grievances that allege unconstitutional conditions of confinement, and they allow their subordinates to threaten prisoners with retaliation unless these prisoners stop filing grievances.  On October 25, 2011, for instance, Defendant Gary Duelen ordered that a prisoner be removed from the CCJ and transferred to a different jail, a county official has conceded, in retaliation for "the large number of grievances and complaints that had been submitted" by that prisoner.  Soon thereafter, the two named plaintiffs, Alfred Young and Lorraine Scott, were threatened with retaliation by guards if they filed any additional grievances, and Ms. Scott was placed in solitary confinement soon after filing a grievance.

Plaintiffs Young and Scott bring this lawsuit on their own behalf and on behalf of all other prisoners of the CCJ to enjoin the operation of Defendants' policy and practice

of retaliating against prisoners for filing grievances. Plaintiffs are not seeking the recovery of money damages. Their only goal is to halt Defendants' unconstitutional policy and practice. Relief is sought pursuant to the First Amendment, as made applicable to the states by the Fourteenth Amendment.

## JURISDICTION AND VENUE

1. This action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343(a)(3) and (4). Venue is properly found in this District pursuant to 28 U.S.C. §1391(b), in that all parties reside, and plaintiffs' claims arose, within the District.

## PLAINTIFFS

2. Plaintiffs Alfred Young and Lorraine Scott are adult citizens of the United States currently incarcerated in the Canyon County Jail.

## THE PLAINTIFF CLASS

3. This action is brought on behalf of the named plaintiffs and on behalf of all other persons incarcerated in the Canyon County Jail, or who may become so incarcerated in the future. Class certification is sought pursuant to F.R.Civ.P. 23(a), (b)(2). Class certification is appropriate because the members of the class are so numerous that joinder of all persons is impracticable; there are questions of fact and law common to the class; the representative parties' claims are typical of the claims of the class; and the named plaintiffs will fairly and adequately represent the interests of the class. In addition, the defendants have acted or refused to act on grounds generally applicable to all members of the class, thereby making appropriate final declaratory and

injunctive relief to the class as a whole, and the questions of law or fact common to members of the class predominate over any questions affecting individual members.

## DEFENDANTS

4.  Defendant Chris Smith is the elected Sheriff of Canyon County, Idaho, and as such has a duty under state and federal law to adequately administer the county jail and provide for the proper and humane care, custody, and control of the persons confined therein. Defendant Gary Duelen has been appointed by Sheriff Smith as Chief Deputy of the Sheriff's Department, and one of his duties is to help administer the county jail. Both Smith and Duelen are sued in their official capacities. All of the acts complained of herein were taken by these defendants under color of state law through their official positions.

## STATEMENT OF FACTS

5.  Defendants Smith and Duelen have established by written policy a process by which prisoners of the CCJ may submit grievances. The policy is set forth on pages 27-28 of the Inmate Handbook. The policy creates a three-level process. Prisoners begin the process by verbally discussing their grievance with the Housing Deputy. If the matter is not resolved, a written grievance may be submitted to the Shift Supervisor, with the right of an appeal to the Detention Center Commander. The Handbook provides that a grievance may be filed by a prisoner regarding any "circumstance or action considered to be unjust and grounds for a complaint."

6.  The Inmate Handbook notifies prisoners that "Grievances can be limited if unnecessary grievances are continually filed." A numeric restriction of this nature is a permissible way of dealing with a prisoner who files frivolous or redundant grievances.

7. Defendants Smith and Duelen have established an unwritten policy and practice, however, that creates a second method of limiting the number of grievances that a prisoner may file: prisoners who file too many grievances, or grievances complaining of unconstitutional conditions of confinement, are retaliated against until they stop. One tactic is to transfer to another jail the prisoners who file grievances, or threaten to transfer them. Another tactic is to place prisoners in isolation (or threaten to place them there) unless they stop filing grievances, and a prisoner who works in the jail was recently told that if he complained about conditions in the jail, he would lose his job. In recent weeks, prisoner Dana Harris was removed from the CCJ and transferred to the Payette County Jail for filing grievances; Plaintiff Lorraine Scott was placed in solitary confinement in retaliation for filing a grievance and, when she was released from isolation, was told that she would be returned to isolation if she filed another grievance; and Plaintiff Alfred Young was threatened with transfer to another jail unless he stopped filing grievances.

**Dana Harris**

8. Dana Harris entered the CCJ on July 31, 2011. During the next three months, Harris submitted many grievances concerning health and safety issues, including claims that the Jail is unsanitary, and that a six-day construction project in an adjoining cellblock resulted in the release of noxious fumes and dust. Harris also began corresponding with the American Civil Liberties Union (ACLU), whose attorneys are currently monitoring implementation by the CCJ of a Consent Decree issued by the Federal District Court that requires the Jail to meet certain health and safety standards.

9. On October 25, 2011, Harris was instructed by CCJ staff to pack his belongings. Harris was placed in a van and transported to the Payette County Jail without

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 5

being told beforehand where he was going or why he was being moved.  Upon his arrival,

the deputy who drove the van advised Payette staff that Harris was a complainer who was

writing to the ACLU.  Harris, who had been in general population at CCJ, was placed in

an isolation cell in Payette where he remained for the next three weeks.

10.  An ACLU attorney who had been corresponding with Harris while he was at

the CCJ, Stephen Pevar, sent an email to Carl Ericson, Deputy Canyon County

Prosecuting Attorney, asking why Harris had been removed from CCJ.  Ericson replied

as follows on November 7 (emphasis added):

> This decision was made by CCSO [Canyon County Sheriff Office] administration based
> on the fact that [Harris] did not appear to like being in our jail *based on the large number*
> *of grievances and complaints that had been submitted*. Gary Deulen, who made the
> decision to transfer him out, *did not know the nature of his complaints*, but only that he
> was complaining every day about numerous things. The decision was made to ameliorate
> the situation for him *and the jail* by sending him to another newer jail where he may be
> more satisfied with the conditions. The administration felt like this would be acceptable
> especially since *he did not have family or other visitors in the area* that visited him in the
> jail. . . .There was no retaliation against Harris. He had major issues with being in our
> jail so he was sent to a jail that would be more acceptable to him.

11.  For several reasons, Plaintiffs believe that the *only* reason why Harris was

removed from CCJ was to prevent him from notifying the ACLU about further

deficiencies in the Jail and to hinder his right of access to the courts.  First, even if it were

true that Harris was "complaining every day," the Inmate Handbook provides an adequate

remedy short of removal: Harris could have been limited in the number of grievances he

was allowed to submit.  Harris' removal was both unnecessary and inconsistent with

Defendants' Inmate Handbook.  Second, the reasons proffered by Defendants for

removing Harris are pretextual.  Ericson claimed, for instance, that Harris "did not have

family or other visitors in the area that visited him in the jail." Yet Harris' girlfriend lives

a few miles away in Nampa and had visited him more than ten times, sometimes twice a

week, since his incarceration.  Third, Jail staff did not ask Harris if he wanted to be

transferred.   Lastly, in a subsequent email, Ericson stated that Harris was removed because when he submitted his grievances, he circled the "no" on his response, indicating that he would not accept Defendants' answer regardless of what they said in response to his concerns.  Yet Harris has in his possession copies of numerous grievances that clearly show that he had not circled the "no" on the form and he disputes Defendants' claim.

12.   Moreover, even if all of the justifications offered by Ericson are true--which Plaintiffs deny—they would not justify removing from Harris from the CCJ for his having submitted grievances.  In other words, Defendants' *admission* that they removed Harris from the CCJ because he had no visitors, filed daily grievances, and circled the "no" option on his form concedes a violation of the First Amendment.  Indeed, the fact that Gary Duelen did not even know what Harris was complaining about and chose to remove him anyway reflects a conscious disregard by Duelen for the health and welfare of prisoners.  Duelen obviously had no interest in determining whether Harris' grievances were legitimate.

**Alfred Young**

13.   Another CCJ prisoner with whom Pevar was corresponding was Plaintiff Alfred Young, a model prisoner who has received no disciplinary write-ups during his incarceration.  Young has filed some grievances (and has written to the ACLU) about the fact that CCJ staff failed to provide Young with the special diet he needed due to his food allergies.  Young has also grieved and written about the fact that CCJ medical staff dispensed *double* the medication that had been prescribed by a physician, causing Young to suffer a severe reaction, including prolonged diarrhea that the Jail was not adequately treating.

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 7

14.  Shortly after Harris had been transferred to Payette for writing too many grievances, Pevar asked Ericson whether Young was at risk of being transferred to Payette if he filed additional grievances.  Ericson assured Pevar that because Young had visitors who lived in the area, Young would not be removed from the CCJ.

15.  A few days later, however, and despite Ericson's assurances, a guard was overheard by two prisoners stating that Young should be sent to Payette if he files any more grievances.  The guard was aware that prisoners were present and that they lived with Young.  The prisoners reported the guard's threat to Young.

16.  Young took the guard's threat seriously.  Young had lived in Harris' housing unit, knew Harris, and knew that Harris had been transferred for writing grievances.  As a result, Young has not sought to grieve the deputy's threat, fearful that doing so will expose him to retaliation.

**Lorraine Scott**

17.  Plaintiff Lorraine Scott entered the CCJ in June 2011 and she, too, has been a model prisoner with no disciplinary write-ups.  Her difficulties began about a month ago when she was threatened by another prisoner.  She reported the threat to staff in a grievance but nothing was done to protect her, and she did not receive a response.  Soon afterwards, other prisoners stole some of her personal property.

18.  The theft of her property prompted Scott to file her second grievance, complaining about the theft of her property and the fact that she had not been protected by staff.  Scott received no written reply to this grievance either, despite the fact that the Inmate Handbook states that a written reply will be made to all grievances within a reasonable time.  Instead, Scott was placed in solitary confinement.

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 8

19.    Scott then submitted her third and final grievance, complaining about the fact that she had been placed in isolation.  She received no reply.  A couple of days later, she asked a guard for a grievance form but the guard refused to provide one.  When Scott was released from isolation several days later, a guard warned her that if she filed another grievance, she would be returned to isolation.  Another guard called Scott (who filed three grievances in five months) a "troublemaker."

20.    It is unclear why CCJ staff ignored Scott's grievances and permitted prisoners to prey on Scott.  What is clear, however, is that Scott has a First Amendment right to file grievances about it, a right that has been chilled due to the threat of retaliation.  As a result of this threat, Scott has not filed any additional grievances.

**Failure to respond to grievances**

21.    Another way in which Defendants retaliate against prisoners and hinder their access to the courts is by ignoring or refusing to respond on the merits to various grievances.   As noted above, Defendants did not respond to any of Scott's three grievances.   After Dana Harris was transferred to Payette, he mailed a grievance to Defendants complaining about his removal, a grievance that Defendants refused to answer.  Recently, a number of prisoners filed a grievance after they observed two guards brutally assault a prisoner, only to be told that complaining about the use of excessive force by guards is not a grievable issue.

22.    The policy and practice that was enforced by Defendants on Harris on October 25, 2011, not only violated his rights but chilled access to the courts for other CCJ prisoners.  It also emboldened staff into threatening other prisoners with retaliation, as evidenced by the fact that within days after Gary Duelen authorized the removal of

Harris for filing grievances (without even assessing the merits of those complaints), guards threatened Plaintiffs Young and Scott with retaliation if they continued to file grievances.

23. According to Ericson, Defendants' removal policy is limited to prisoners who have no visitors in the vicinity.  Defendants, however, have not notified prisoners that their policy is so limited.  There is nothing in the Inmate Handbook that informs prisoners that they are subject to removal from the jail if they have no visitors and file grievances. Moreover, CCJ guards are not limiting their retaliation to only those persons.  Even if Defendants did limit their removal policy to prisoners who have no visitors, it would violate the First Amendment rights of those prisoners so affected.

24.  Defendants' policy and practice of retaliating against Plaintiffs for filing grievances and accessing the courts chills their First Amendment rights and is causing them to suffer irreparable injury.

22.  The removal of Dana Harris for filing grievances, the threat to remove Young for filing grievances, and the threat to place Scott in isolation for filing grievances and for accessing the courts chilled their First Amendment rights and caused them to suffer irreparable harm.

## CLAIM FOR RELIEF

23.  Based on the allegations set forth above, Plaintiffs contend that Defendants' policy and practice of retaliating against prisoners, including Plaintiffs Young and Scott, for filing grievances and for accessing the courts violates rights guaranteed all prisoners of the CCJ by the First and Fourteenth Amendments to the Constitution of the United States.  Relief is sought pursuant to 42 U.S.C. § 1983.

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 10

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court will:

1. Assume jurisdiction over this matter;

2. Certify this action as a class action pursuant to Rule 23(a), (b)(2), F.R.Civ.P.;

3. Issue a declaratory judgment that Defendants' policy and practice of retaliating against prisoners for filing grievances and for accessing the courts violates the First and Fourteenth Amendments to the United States Constitution;

4. Issue preliminary and permanent injunctive relief pursuant to Rule 65 F.R.Civ.P., enjoining defendants and all persons in concert with them, and their successors in office, from retaliating against prisoners for filing grievances and for accessing the courts; and

5. Grant plaintiffs their costs and attorneys' fees in this matter, and such other and further relief as to the Court may seem just and proper.

/s/ Stephen L. Pevar_____

/s/ Lea C. Cooper_____

Attorneys for Plaintiffs

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 11